UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Monica West,

    Plaintiff,

v.                                        Case No. 08-15239

                                         Honorable Sean F. Cox

United States of America,

    Defendant.
_____/

## OPINION & ORDER
## GRANTING IN PART, AND DENYING IN PART,
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This action against the United States was filed pursuant to the Federal Tort Claims Act. It arises out of a January 18, 2006 traffic accident involving Plaintiff, a pedestrian, and a vehicle operated by an employee of the United States Postal Service. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The parties have briefed the issues and oral argument was heard on February 18, 2010. For the reasons set forth below, the Court shall GRANT THE MOTION IN PART AND DENY THE MOTION IN PART. The Court shall grant the motion only to extent that it shall rule that Plaintiff cannot recover any economic damages because, in response to Defendant's properly supported motion, Plaintiff has failed to present any evidence to establish that she incurred any allowable expenses in excess of the statutory cap. The remaining issue is whether Plaintiff's injuries constitute a "serious impairment of body function," which in this motion turns on whether or not her injuries affected her "general ability to lead a normal life." The Court concludes that Plaintiff has presented sufficient evidence to create an issue of fact as to whether her injuries affected her general ability

1

to lead her normal life.

BACKGROUND

On or about January 18, 2006, Plaintiff Monica West ("West") was struck by a vehicle driven by Michael Anthony Turner ("Turner"). It is undisputed that the vehicle Turner was driving is owned by the United States Postal Service and was being operated within the scope of Turner's employment.

On December 22, 2008, West filed this action against Turner and the United States Postal Service, asserting claims under the Federal Tort Claims Act. West's complaint asserts that the United States is liable for all of her injuries proximately caused by Turner's negligence. West alleges that, pursuant to 28 U.S.C. § 2674, the United States "is liable to her for the tortious conduct of Defendant Turner in the same manner and to the same extent as a private individual under like circumstances." (Compl. at ¶ 18). West alleges that her "injuries constitute a serious impairment of bodily function" and alleges that her injuries include: brain injury, stress, depression, memory loss, headaches, internal derangement of the left knee, spinal injury, muscle spasms, neck, back and arm injuries. (*Id*. at ¶ 15).

Although West's Complaint included a jury demand, she now recognizes that any trial in this action would be a bench trial. (*See* Pl.'s Br. at 1). This is because there is no right to a jury trial under the Federal Tort Claims Act. *United States v. Neustadt,* 366 U.S. 696, 701 n.10 (1961); 28 U.S.C. § 2402; *Wilson v. Big Sandy Health Care, Inc*., 576 F.3d 329, 334 (6th Cir. 2009). Thus, any trial in this action would be a bench trial**.**

After this action was filed the parties agreed that, pursuant to the Federal Tort Claims Act, specifically 28 U.S.C. § 2679, the United States is the proper Defendant in this case. Thus,

the parties stipulated that the United States would be substituted as the Defendant in this action. (Docket Entry No. 11).

On November 30, 2009, Defendant filed its Motion for Summary Judgment. On January 18, 2010, Plaintiff filed a response brief opposing the motion.

The evidence presented, taken in the light most favorable to Plaintiff, reflects the following.

West was born on November 15, 1970. (West Dep.[1] at 4). West did not graduate from high school. She dropped out in 1985 and the last grade she completed was eleventh grade. (West Dep. at 26). West was a "stay-at-home mom" from approximately 2000 until the accident. (West Dep. at 25). As her children got older, however, West wanted to have a career and she therefore began pursuing a General Equivalency Diploma ("GED"). (*Id.*).

The accident at issue occurred on January 18, 2006. (Pl.'s Affidavit at ¶ 2). At the time of the accident, West was 35 years old and was attending GED classes at the Trinity Adult Education Center. (West Dep. at 26; West Affidavit at ¶¶ 3 & 8).

Prior to the accident, West was at a Level 11 in her GED studies. (West Dep. at 43). West did not have any problems with memory or focus. (*Id.*). As of January 18, 2006, West had already successfully completed two of the five tests that she need to obtain her GED and she was in the process of making arrangements to take the other three tests. (West Affidavit at ¶ 4).

West testified that before the accident she was "always active" and participated in skating, biking, and riding skate boards. (West Dep. at 8). Before the accident, she also worked

---

[1] Unless otherwise noted, all references to "West Dep." refer to her November 6, 2009 deposition.

outside, gardening and planting flowers. (West Affidavit at ¶ 11). She did her own household chores such as washing clothes, cooking and grocery shopping and took care of her two children. (*Id*.) Prior to the accident, West also enjoyed going shopping with her teenage daughter. (West Dep. at 48).

Prior to the accident, West drove her daughter to school, was very active at her children's school, and a was a frequent volunteer. (West Dep. at 15; West 5/23/07 Dep. at 36).

Prior to the accident, West performed some work out of her home. (West Dep. at 7). She had customers who would come to her home for hairstyling services. (*Id*.).

In addition, West testified that she had a job interview with a janitorial service, Rudy T. Enterprise, prior to the accident. (West 5/23/07 Dep. at 23-28). West was offered a full-time job, earning $9.00 per hour. She was supposed to start work on January 18, 2006 – the day of the accident. West had planned to work afternoon shifts so that she could attend GED classes in the morning. (*Id*.). After the accident, however, she was unable to start that job.

The accident occurred while West was on her lunch break at Trinity. (West Affidavit at ¶ 3). As West was crossing the street, she was hit by a postal truck that was being driven by Turner. (*Id*. at ¶ 2).

After the accident, West and Turner exchanged information. Then a friend of West's took her to the Emergency Room at Sinai-Grace Hospital. (West Dep. at 6). The police were called and they came to the hospital to take a report. During her January 18, 2006 E.R. visit, West's primary complaint was pain in her left arm. (West Dep. at 8). The x-rays of West's arm did not show any fractures or broken bones. (*Id*.). West was told to follow up with her physician within the next two days and was given prescriptions for medicine to help with the

4

pain. (Ex. 4 to Govt.'s Br.).

West went to see Dr. Irwin Lutwin[2] on January 25, 2006, complaining of back pain, left shoulder and arm pain and left leg pain. (Ex. H at Bates No. 00034). Dr. Lutwin conducted a physical examination, noting: "left shoulder is restricted in motion and is positive for both the Hawkins and Hanging Drop Test," and "left knee has some swelling and it restricted in flexion and extension." Dr. Lutwin's diagnosis was "whiplash, L/S strain, left shoulder strain, left knee strain." He ordered MRIs, prescribed physical therapy three times a week for four weeks, and prescribed Vicodin and Flexeril. (*Id.* at Bases No. 00036). Dr. Lutwin stated the following medical restrictions: "She is disabled at the present time. She does need help with housekeeping and she does need help with driving. We will re-evaluate her in approximately four weeks, after she gets the MRI's that we ordered." (*Id.*).

Dr. Lutwin ultimately concluded that West was disabled from employment, driving and housework through February 3, 2007. (Ex. O to Pl.'s Br.). Other treating physicians also indicated that West was disabled. (*See, e.g.*, Ex. P and Ex. V to Pl.'s Br.)

West has treated with several different doctors since the accident. Plaintiff's physical examinations, and the various MRI's and tests performed, have resulted in both normal results and abnormal results. For example, Dr. Lutwin's records indicate that: 1) West's "MRI of the cervical spine showed spasms but no herniated discs," 2) the MRI of her left knee showed "patella conframalgia," and the MRI of West's "L/S spine" "showed mild diffuse posterior disc bulging at L4 L5, L5 S1." (Ex. H to Pl.'s Br. at Bates No. 00025 & 00028). After performing a neurological evaluation, Dr. Steven Schechter found that West "presents with a history of

---

[2]His name is apparently misspelled as "Luttman" in West's deposition transcript.

posttraumatic syndrome, consistent with mild [traumatic brain injury] based on memory loss, mood swings, headaches and mood disorder." (Ex. R. to Pl.'s Br.). West has been treated with various medications, multiple physical therapy sessions at different facilities, and occupational therapy. She required the use of a cane for approximately nine months. (West Dep. at 19-20). At the time of her deposition she was still taking Topamax and another medication for memory loss. (West Dep. at 15).

After the accident, West notified Titan Insurance Company about the accident and applied for benefits under Michigan's No-Fault law.

On March 28, 2006, Titan arranged for West to undergo an independent medical evaluation by Dr. Jeffrey Middeldorf. (Ex. 9 to Govt.'s Br.). Dr. Middeldorf ultimately concluded that West was able to work without restrictions. In a letter dated April 28, 2006, Titan informed West that, based on the results of Dr. Middeldorf's examination, Titan was "terminating all Personal Injury Protection benefits which includes payment of work loss and medical expenses for left knee, left hip, left shoulder and spine, effective April 28, 2006." (Ex. 13 to Govt.'s Motion).

Titan also sent West for an independent neuropsychology evaluation with M. Frank Greiffenstein, Ph.D. Based on Dr. Greiffenstein's report, Titan notified West that it was "terminating all Personal Injury Protection benefits which includes payment of work loss and medical expenses effective September 13, 2006, for neurology and neuropsychology." (Ex. 16 to Govt.'s Motion).

Thereafter, West filed suit against Titan in state court, seeking additional PIP benefits. (Ex. 17 to Govt.'s Motion). West and Titan ultimately settled that lawsuit.

West filed this suit on December 22, 2008. The evidence presented by the parties in this case reflects the following regarding West's life after the accident.

After the accident, West experienced neck pain, back pain, problems with her knee, and severe headaches. (West Affidavit at ¶ 7). West testified that she has still not fully recovered.

As of the date of her deposition on November 6, 2009: 1) West was still using a brace on her left wrist on a daily basis (West Dep. at 34); 2) was still unable to do heavy housework, such as taking out the garbage or doing any lifting (*Id*. at 35); 3) was still having shoulder pain (*Id*. at 36); and 4) was still taking narcotic medications that were causing her to have memory problems (*Id*. at 36-37; West Affidavit).

West's problems with memory and concentration/focus have hindered her progress in obtaining a GED. (West Dep. at 42-43; West Affidavit at ¶ 7). West has also had difficulty concentrating in her classes due to the side effects of her medications, which include narcotics. (West Affidavit at ¶ 11). At the time of her deposition on November 6, 2009, West had regressed to a Level 6.8 in her GED studies. (West Dep. at 42-43). She testified that she was therefore no longer in actual GED classes, but rather, was now in a "pre-GED classes." (*Id*.).

West's required physical therapy sessions also interfered with her progress in pursuing a GED. In September 2007, West enrolled in GED classes at Shoemaker Adult Education. However, due to the pain she was experiencing at that time, and the fact that she had to miss class three times per week in order get physical therapy, she could not complete the courses. (West Affidavit at ¶ 11).

West states that if the accident had not happened she would have obtained her GED in 2006. To date, however, she has not been able to obtain her GED. In September 2009, West

7

enrolled in Eastside Adult Education, where she is presently attending classes. (*Id*.).

Since the accident, West has been unable to participate in gardening and planting flowers. (West Affidavit at ¶ 11). After the accident, West required "assistance with washing clothes, cooking, grocery shopping and lifting different household products like cans and other cooking materials." (*Id*.). West had to hire others to perform washing, cooking, grocery shopping and lawn care. (West 5/23/07 Dep. at 29). West can no longer shop with her teenage daughter like she used to do before the accident. (West Dep. at 48).

West was unable to drive a car after the accident. (West 5/23/07 Dep. at 31). Thus, West was not able to drive her daughter to school after the accident like she previously had done. West testified that she had to hire a transportation service to drive her daughter to school from the date of the accident through the end of the school year in June, 2006. (*Id*. at 31-34). West was not able to begin driving her daughter to school again until January of 2007. (*Id*.). West also had to use a transportation service to take West to her various appointments. (*Id*. at 31-33).

While her pain has improved, West still suffers from back and shoulder pain. (West Affidavit at ¶ 11). She has been unable to participate in social gatherings due to the pain she was experiencing and the medications she was taking. (West Affidavit at ¶ 11).

West has not resumed the hairstyling work that she used to perform out of her home before the accident. (West Dep. at 7.) West was also unable to start the janitorial job that she had been offered prior to the accident. (West Dep. at 23-38). In addition, West has been unable to seek other jobs due to pain and her numerous appointments with doctors and physical therapy. (West Affidavit at ¶ 11).

Standard Of Decision:

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

The Federal Tort Claims Act constitutes a limited waiver of sovereign immunity and authorizes suit against the United States, making the federal government liable in the same manner and to the same extent as a private party would be for certain torts of federal employees acting within the scope of their employment. *Yeary v. United States*, 754 F.Supp. 546, 549 (E.D. Mich. 1991) (Citing *Schindler v. United States*, 661 F.2d 552, 554 n.2 (6th Cir. 1981)).

The United States District Courts have exclusive jurisdiction over civil actions such as this one, where claims are asserted against the United States for money damages caused by the negligent act of an employee of the Government while acting within the scope of his employment. 28 U.S.C. § 1346(b). In such cases, the Court must follow the law of the state in which the allegedly negligent act occurred. *Yeary*, 754 F.Supp. at 549. Because the accident at issue in this case occurred in Michigan, both parties agree that Michigan's No-Fault law governs

9

West's ability to obtain tort-related damages arising from the accident.

In its motion, the United States contends that: 1) West is not entitled to any economic damages; and 2) West is not entitled to noneconomic tort damages because her injuries do not constitute a serious impairment of bodily function.

A.      Economic Damages:

Both parties agree that the Government is not liable for economic damages to the extent payable by West's No-Fault insurer. West, however, seeks to recover excess economic damages that exceed the statutory limitations of Michigan's No-Fault Act. That is, West is "seeking excess economic damages not covered by the MNFA, including wage loss beyond the first three years after the collision." (Pl.'s Br., Docket Entry No. 25, at 2). The parties agree that West's request for economic damages here is controlled by M.C.L. § 500.3135(3)(c).

In its motion, the Government contends that West cannot recover economic damages here because she cannot prove that she incurred any allowable expenses in excess of the statutory cap. (Govt.'s Br. at 7-8).

In response to the Government's properly supported request for summary judgment on the issue of economic damages, West has not established that she incurred any allowable expenses in excess of the statutory cap. While the introduction portion of West's response brief states that she is seeking economic damages, and notes the governing statute, her brief does not analyze the issue or discuss the evidence that she believes entitles her to such an award. Rather, her response brief addresses non-economic damages and the issue of whether West can establish a serious impairment of bodily function. With respect to the issue of economic damages, her response brief simply states as follows, without further discussion or reference to any evidence:

> Plaintiff does have excess economic damages because she was disabled from work and required household assistance past the three year anniversary of the collision.

(Pl.'s Br. at 3).

Accordingly, the Court shall rule in favor of the Government on this issue as Plaintiff has presented no evidence to establish that she incurred any allowable expenses in excess of the statutory cap.

B.  Non-Economic Damages:

The parties agree that in order for West to recover non-economic damages under Michigan law, she must prove a "serious impairment of body function." M.C.L. § 500.4135(1).[3] "The statute goes on to define 'serious impairment of body function' as '[1.] an objectively manifested impairment of [2.] an important body function that [3.] affects the person's general ability to lead his or her normal life.'" *Mungai v. Cline*, 2007 WL 2325075 (E.D. Mich. 2007) (citing M.C.L. § 500.3135(7)).

In *Kreiner,* the Michigan Supreme Court outlined the following process for determining whether this standard has been met. *Kreiner v. Fischer*, 471 Mich. 109 (2004).

"First, a court must determine that there is no factual dispute concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function. If a court so concludes, it may continue to the next step. But, if a court determines that there are factual disputes concerning the nature and extent of a plaintiff's injuries that are material to determining

---

[3]The statute also allows for such recovery in two other situations (death or serious disfigurement) that do not apply here.

whether the plaintiff has suffered a serious impairment of body function, the court may not decide the issue as a matter of law." *Kreiner*, 471 Mich. at 131-32.

"Second, if a court can decide the issue as a matter of law, it must next determine if an 'important body function' of the plaintiff has been impaired. It is insufficient if the impairment is of an unimportant body function. If a court finds that an important body function has in fact been impaired, it must then determine if the impairment is objectively manifested. Subjective complaints that are not medically documented are insufficient." *Id*. at 132.

"If a court finds that an important body function has been impaired, and that the impairment is objectively manifested, it then must determine if the impairment affects the plaintiff's general ability to lead his or her normal life. In determining whether the course of the plaintiff's normal life has been affected, a court should engage in a multifaceted inquiry, comparing the plaintiff's life before and after the accident as well as the significance of any affected aspects on the course of the plaintiff's overall life. Once this is identified, the court must engage in an objective analysis regarding whether any difference between the plaintiff's pre- and post-accident lifestyle has actually affected the plaintiff's 'general ability' to conduct the course of his life. Merely '*any* effect' on the plaintiff's life is insufficient because a de minimis effect would not, as objectively viewed, affect the plaintiff's 'general ability' to lead his life." *Id*. at 132-33 (emphasis in original).

In its motion, the Government asserts that West cannot recover noneconomic damages because her impairments do not affect her general ability to lead her normal life under *Kreiner*.

In Response, West asks this Court to disregard the Michigan Supreme Court's decision in *Kreiner*. (Pl.'s Br. at 8). West states that the decision has been widely criticized and states that

"the Michigan Supreme Court has granted the plaintiff leave to appeal in *McCormick v. Allied Automotive Group,* Case No. 136738, and on January 13, 2010 issued an Opinion granting leave to file amicus curiae briefs to various groups who are urging the reversal of *Kreiner*." (Pl.'s Br. at 7). West asks this Court to either disregard *Kreiner* or "defer ruling on Defendant's Motion for Summary Judgment, until a decision in *McCormick* is issued." (*Id.*).

West further asserts that she should survive summary judgment even under *Kreiner.* In support of her position, West cites three post-*Kreiner* decisions from the Michigan Court of Appeals: 1) *Jones v. Suburban Mobility Authority for Regional Transportation*, 2007 WL 1138390 (Mich. App. April 17, 2007); 2) *Laukkanen v. Jason*, 2008 WL 183312 (Mich. App. Jan. 22, 2008); and 3) *Nassar v. Bazzi*, 2008 WL 4891489 (Mich. App. Nov. 13, 2008).

The Court agrees that West has presented sufficient evidence to create an issue of fact as to whether her injuries affected her general ability to lead her normal life.

> 1. <u>Are There Factual Disputes Concerning The Nature And Extent Of West's Injuries?</u>

As set forth in *Kreiner*, the first step in the inquiry is to determine if there is a "factual dispute concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function."

In its motion, the Government takes the position that, although there are factual disputes, the disputes are not material to whether Plaintiff suffered a "serious impairment of body function" because even assuming that all of West's allegations concerning the nature and extent of her injuries are true, she has still not suffered a serious impairment of body function because her injuries did not affect her general ability to lead her normal life. *See Kreiner*, 471 Mich. at

628 n.21. Accordingly, the Court proceeds to the next step of the analysis.

      2.      <u>Has An Important Body Function Been Impaired And, If So, Is The Impairment Objectively Manifested?</u>

At the second step, the Court must determine if an "important body function" of the plaintiff has been impaired and, if so, whether the impairment is objectively manifested.

Plaintiff's brief asserts that walking, using her neck and using her back are important body functions. (Pl.'s Br. at 14).

The Government concedes that "walking, and the ability to use ones back and neck are important body functions." (Govt.'s Reply Br. at 3 n.2). In addition, for purposes of this motion, the Government also concedes that Plaintiff has "identified objective evidence" of her injuries. (*Id*.).

Accordingly, the parties agree that, for purposes of this motion, an important body function has been impaired and that the impairment is objectively manifested.

      3.      <u>Has The Impairment Affected West's General Ability To Lead Her Normal Life?</u>

The heart of the Government's motion is its contention that West cannot establish that her impairments "affect her general ability to lead her normal life" under *Kreiner*.

Whether an impairment affects a person's general ability to lead his or her normal life turns on a comparison between a plaintiff's life before and after the accident. *Kreiner,* 471 Mich. at 131-32. "In determining whether the course of the plaintiff's normal life has been affected, a court should engage in a multifaceted inquiry, comparing the plaintiff's life before and after the accident as well as the significance of any affected aspects on the course of the plaintiff's overall life." *Id.* at 132-33. The *Kreiner* court further explained:

> [T]he effect of the impairment on the course of a plaintiff's entire normal life

> must be considered. Although some aspects of a plaintiff's entire normal life may be interrupted by the impairment, if, despite those impingements, the course or trajectory of the of the plaintiff's normal life has not been affected, then the plaintiff's normal life has not been affected, then the plaintiff's "general ability" to lead his normal life has not been affected and he does not meet the "serious impairment of body function" threshold.

*Kreiner*, 471 Mich. at 131.

The court provided several factors for a court to consider when making the determination: 1) the nature and extent of the impairment; 2) the type and length of treatment required, 3) the duration of the impairment, 4) the extent of any residual impairment; and 5) the prognosis for eventual recovery. *Id*. at 133. That list is "not meant to be exclusive nor are any of the individual factors meant to be dispositive by themselves. For example, that the duration of the impairment is short does not necessarily preclude a finding of a 'serious impairment of body function.'" *Id*. at 134.

Considering the totality of the circumstances, and the post-*Kreiner* decisions relied on by West, the Court concludes that West has presented sufficient evidence to create an issue of fact as to whether her injuries affected her general ability to lead her normal life.

In *Vlietstra,* the plaintiff was 17 years old when he was injured, suffering fractures of his lower spine, on June 26, 2004. He was restricted from engaging in strenuous activity for three months and he returned to work without restrictions in August 2004. He never lost the ability to drive a car and he resumed cooking and cleaning for himself in August 2004. He testified that his injuries did not have any impact on his choices regarding his education or career path. As in this case, there was no dispute that he sustained an impairment of an important body function that was objectively manifested. The sole issue was whether his impairment affected his ability to lead a normal life. The trial court granted summary disposition in favor of the defendant on

that issue.

The Michigan Court of Appeals reversed. In doing so, the appellate court noted that "plaintiff's claim that his impairment affected his general ability to lead his normal life rests on the restrictions he experienced in the first few months after his injury," that plaintiff was "never unable to care for himself at a basic level," and he "was able to return to school and work, albeit with some limitations." The Court then stated:

> However, it is also clear that plaintiff enjoyed an active lifestyle prior to the accident, with a strong emphasis on highly physical outdoor activities – e.g., rollerblading or water-skiing. He testified that he is no longer capable of engaging in many of those activities. We would not lightly dismiss such a fundamental reduction in a person's lifestyle.

*Id.* at *3.

Here, if West's testimony is believed, her impairments could be found to affect her general ability to lead her normal life. West has provided testimony to establish that her impairments affected several important aspects of her life: 1) her pursuit of her education, 2) her ability to work, 3) her daily life with her family, and 4) her ability to engage in recreational activities. The Court concludes that the evidence presented here is even stronger than that which was offered in *Vlietstra.*

In terms of her education, West has presented evidence to establish that prior to the accident she: 1) was pursuing a GED and expected to be done in 2006; 2) was at a Level 11 in her studies; 3) had successfully completed two of the five tests that she needed to obtain her

16

GED and was in the process of making arrangements to take the other three tests; and 4) she had no problems with memory or focus.  The evidence presented by West shows that post-accident she: 1) still does not have a GED in 2010; 2) regressed to a Level 6.8 in her studies; 3) went from taking GED classes to needing pre-GED classes; and 4) has problems with memory and concentration/focus that have hindered her progress.

In terms of work, West has presented evidence to establish that prior to the accident she: 1) was doing some hairstyling work out of her home; and 2) had been offered a full-time janitorial job and was going to start that job on the day of the accident.  The evidence presented by West shows that post-accident she: 1) lost the hairstyling customers and no longer performs this work; 2) could not take the janitorial job due to her injuries; and 3) has been unable to seek other jobs due to pain and multiple doctor and physical therapy appointments.

In terms of West's family life, West has presented evidence to establish that prior to the accident she: 1) was able to drive a car; 2) drove her daughter to school and was an active volunteer at her daughter's school; and 3) did all of her own housework.  After the accident, however, West: 1) could not drive from the date of the accident until January 2007 and had to hire others to drive both her and her daughter; 2) had to hire others to perform washing, cooking, grocery shopping and lawn care; and 3) still cannot do heavy housework such as taking out the garbage or doing any lifting.

In terms of recreational activity, West has presented evidence to establish that prior to the accident she: 1) was "always active" and participated in skating, biking, and riding skate boards; 2) worked outside in the yard, planting flowers and gardening; and 3) enjoyed shopping with her teenage daughter.  After the accident, however, West: 1) cannot skate, bike, or ride skate boards;

17

2) cannot do planting or gardening, 3) can no longer shop with her daughter like she used to; and 4) has been unable to participate in social gatherings due to pain and effects of narcotic medications.

Accordingly, the Court concludes that West has presented sufficient evidence to create an issue of fact as to whether her injuries affected her general ability to lead her normal life.

CONCLUSION & ORDER

For the above reasons, **IT IS ORDERED** that the Government's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent that the Court rules that West cannot recover any economic damages in this action. The motion is **DENIED** in all other respects.

**IT IS SO ORDERED**.

             S/Sean F. Cox
             Sean F. Cox
             United States District Judge

Dated: March 23, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 23, 2010, by electronic and/or ordinary mail.

             S/Jennifer Hernandez
             Case Manager